[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, (d.o.b. 8-29-32) whose birth name is Knight, and the defendant husband, (d.o.b. 7-21-36) married on July 21, 1962 in Manchester, Jamaica, West Indies. They moved to the U.S. in 1967. In 1969, the parties moved to Greenwich, Connecticut and acquired their own home known as 25 Oak Ridge Street, Greenwich for $31,500.00. The seller was given a purchase money mortgage of $21,000.00 (Plaintiff's Exhibit #2 and #3). The deposit and down payment balance came from the parties savings and a loan. They lived on the second floor and rented two apartments located on the first floor. After the purchase, the defendant commenced work on the building. He applied aluminum siding to the exterior. He remodeled the second floor apartment where the parties lived. All the windows in the home were replaced. A new roof was constructed under which was created a second floor apartment. The original mortgage was replaced with successive mortgages in order to raise the funds for the construction. (cf. Plaintiff's Exhibit #22, 23, 24, 25 and 26). CT Page 2379 The renovation was finally completed in 1987. The apartments were each rented for $700.00 monthly initially. When the premises were sold, each apartment was rented for $750.00.
Upon arriving in the U.S.A., both parties worked for a family in Rye, New York, receiving living quarters as well as $50.00 weekly paid to each. Three months later, the defendant went to work for Russell, Birdsall and Ward, Port Chester as a laboratory tester on the second shift. He also worked a succession of daytime second jobs. The plaintiff also left the residential job to work for Greenwich Hospital as a paramedic aide and worked second jobs as well. After one year the parties moved to Greenwich, Connecticut.
Both parties continued to work throughout their marriage until 1992 when the plaintiff retired. The defendant's medical insurance then picked up the coverage of the plaintiff. Continuance of medical insurance on the plaintiffs necessary since she had been diagnosed as having diabetes in 1985. The defendant continued to work at United Hospital until 1994 when an earlier work-connected back injury disabled him. He received weekly workers' compensation for several months as well as using his sick time. In July, retirement became effective. His medical insurance then was subject to the COBRA provisions which would allow him to continue coverage for himself and his wife.
The defendant went to Jamaica, W.I. on July 31, 1994 while the plaintiff remained at home. A letter from the defendant's employer, dated August 10, 1994, advised the defendant that the continuation of medical benefits form had to be received by the employer no later than October 10, 1994 with an initial payment for the coverage elected. (Plaintiff's Exhibit #4). The plaintiff testified that she first called the defendant in late August to advise him that the insurance confirmation papers had arrived. The defendant disputes this and claims he received no call until early October. The plaintiff also testified that the defendant asked her to sign his name and return it to the hospital. She declined to act as his amanuensis and told him so. The data were all filled in by the plaintiff in her handwriting including the date, "August, 1994." In early October, the plaintiff and the defendant spoke again by telephone. During that conversation, as described by the plaintiff, the defendant told her he would return from Jamaica in time to turn in the insurance form. He arrived home on the 11th or 12th of October, too late to meet the deadline. Although he carried the form to his former place of CT Page 2380 employment it was rejected and the insurance coverage was lost.
The court accepts the plaintiff's version of these events. Although the defendant was on notice as early as August that he had to attend to filing the form and paying an initial premium, he failed to do so. Such failure resulted in the loss of the medical insurance coverage for both himself and his spouse. Dire consequences followed.
Shortly thereafter, the plaintiff, a diabetic, was admitted to Greenwich Hospital where she remained for several weeks. During her hospital stay the plaintiff's right foot was amputated. She returned to the hospital for a second stay from December 28, 1994 until February, 1995. The total bill for care totaled about $375,000.00. The defendant negotiated a compromise of the hospital's bills which were settled for $104,000.00.
In order to satisfy the settlement made with Greenwich Hospital, the parties were obliged to sell their marital home in July, 1997. (Defendant's Exhibit #5) From the proceeds, $100,000.00 was disbursed to settle the hospital claim and the balance of the net proceeds remains in escrow (Plaintiff's Exhibit #7). The parties have agreed that the current balance held is $105,755.00. Some disbursements have been made and the plaintiff has drawn $4,100.00 more than has the defendant (accounting filed on December 1, 1998 by agreement). The court also notes that in addition to paying the hospital, the parties paid a mortgage balance of $7,587.00 due First Union Mortgage Corporation and a mortgage balance of $32,848.00 due Fleet Finance Inc., (Plaintiff's Exhibit #6). Some of the equity that was encumbered was used by the defendant to acquire other parcels of real estate in his name.
Together with three other persons the defendant purchased 351 Glenbrook Road, Stamford, Connecticut on December 29, 1989. It contains two apartments. The first floor consists of five rooms and two baths, and the second floor apartment contains six rooms plus two baths. An appraisal of this parcel states that, as of November 19, 1998, the market value was $275,000.00. The premises are mortgaged for $220,000.00. Ergo, the defendant's 25% interest is valued by the court as $13,750.00 (Defendant's Exhibit).
The defendant purchased a parcel of land in Jamaica in the 1970 — 1974 time frame on which he later built a house. It is known as 1 Gordon Close, Mandeville, Manchester and contains four CT Page 2381 baths, four bedrooms, a kitchen, living room and storage on two floors. There is no basement or attic. The purchase of the land and construction of the house were all paid from the defendant's earnings. The construction was completed in 1987. There is no mortgage on the property. Each party obtained an appraisal of the premises and the market values stated were remarkably close (Plaintiff's Exhibit #18 and Defendant's Exhibit B). The court concludes that the fair market value, in U.S. dollars, is $250,000.00.
The plaintiff is owner of an undivided 50% interest in a parcel of real estate known as 54 Oak Ridge Street, Greenwich which was purchased with her son Wayne C. Swaley on November 7, 1983. The plaintiff paid no money toward the purchase. She lent her credit in order to enable her son to complete the purchase. The plaintiff moved to this house when 25 Oak Ridge Street was sold. The plaintiff values her half interest in the property, net of mortgage, at $79,267.00.
The plaintiff also owns an interest in a parcel located in Corby District, Elizabeth Parish, Jamaica, W.I. containing about three of four acres and a 750 square foot dwelling. The plaintiff's appraisal states the parcel has a market value, in U.S. dollars, of $81,225.00. The plaintiff's 1/3 interest may also be subject to a widow's life estate. The defendant's appraisal of the property estimates it to contain 9 acres. The size of the dwelling is given as 718.11 feet. The appraisal concludes that, in U.S. dollars, the premises enjoy a market value of $288.000.00. A close reading of the two appraisals fails to account for the vast difference between the two. The court concludes that it shall accept the plaintiff's interest as valued by her as $13,889.00 on her financial affidavit.
The parcel situated at "Bottom Coffee Grove, Manchester, Jamaica, W.I." surfaced during the trial. It contains two acres and Plaintiff's Exhibit #19, an appraisal made by Manifest Real Estate of Jamaica, W.I., states that the defendant has an interest in fee simple therein. The defendant introduced a "Report and Valuation" (Defendant's Exhibit C) which states that the estate of Simeon South is the registered owner but status of title was unavailable. A small dwelling house stands on the property consisting of 388.25 square feet of gross floor area, which is at the end of its economic life. The appraisal observes demolition and reconstruction is in order. If the building is worthless, then the two appraisers' opinions agree that the CT Page 2382 vacant land is valued at $100,000.00 Jamaican dollars, converted to $3,000.00 U.S. The plaintiff's interest has little value.
The court concludes that the defendant has created a substantial real estate holding at 1 Garden Close, Mandeville, in Jamaica, W.I. utilizing marital funds. In entering the financial orders in this case, the court is mindful that it cannot redistribute real property title by operation of law located in Jamaica, W.I., but must rely on its coercive power over the party and over the assets physically or constructively under its jurisdiction. The court is also mindful of the efforts that might be necessitated in the future if the party under order of this court proved to be recalcitrant. The court has concluded that an equal division of the parties assets is equitable and the court will make the following orders in order to bring such a division about in this case. Having made these observations, and having weighed the evidence, and having evaluated the credibility of each witness, all in light of § 46b-81 and weighed the evidence, and having evaluated the credibility of each witness, all in light of § 46b-81 and § 46b-82, the court enters the following decree.
1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown. Each party is declared to be unmarried.
2. The escrow fund is ordered released to the plaintiff as her sole property.
3. The plaintiff is awarded lump sum alimony of $25,000.00, payable by the defendant as follows. An initial payment of $10,000.00 is due on August 1, 1999 and the final $15,000.00 is due on February 1, 2000. Interest shall accrue on any unpaid balance at the judgment rate after the due dates if payment is not made as ordered.
4. The remaining assets of the Plaintiff shall remain her sole property.
5. The remaining assets of the Defendant shall remain his sole property.
6. The defendant shall pay to the plaintiff, as periodic alimony, the weekly sum of $100.00 until the death of either party, the plaintiff's remarriage, or future court order brought CT Page 2383 about by § 46b-86 (b). However, the said statute does not apply to her present circumstances of residing with her relative and its applicability is limited to living with an unrelated person. A wage withholding is entered pursuant to statute.
Counsel for the plaintiff is directed to prepare the judgment file.
So Ordered.
HARRIGAN, J.